IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF MISSISSIPPI

GREENVILLE DIVISION

DIANNE LODEN, individually and on behalf of all
Wrongful death beneficiaries of JEFFREY A. DAVIS,

*Plaintiff,*

v.                                                      CIVIL ACTION NO.: **4:18-CV-118-DMB-JMV**

MISSISSIPPI DEPARTMENT OF CORRECTIONS;
CENTURION OF MISSISSIPPI and DEFENDANT
DOES 1 through 10,

*Defendants.*

JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW, the Plaintiff, Dianne Loden, individually and on behalf of all wrongful death beneficiaries of Jeffrey A. Davis (hereinafter referred to as "Plaintiff"), and states her causes of action for actual, compensatory and punitive damages and for reasonable costs of this action and attorneys' fees for the Defendants' violation of their rights under the Fourteenth Amendment made actionable pursuant to 42 U.S.C. § 1983 and for violations of Mississippi statutory and common law. The following averments support this civil action:

## PARTIES

1.      Plaintiff Dianne Loden is an adult resident citizen of the State of Mississippi. Dianne Loden is a party to this suit in her individual capacity as natural mother and next of kin of

1

Jeffrey A. Davis, deceased, as an heir to the estate of Jeffrey A. Davis, and as wrongful death beneficiary of Jeffrey A. Davis.

2.      Defendant Mississippi Department of Corrections is an agency of the State of Mississippi. Service can be made to the office of the Attorney General whose mailing address is P.O. Box 220, Jackson, MS 39205.

3.      Defendant Centurion of Mississippi, LLC, healthcare provider for Mississippi State Penitentiary, is a domestic corporation, with its principal place of business located at 7700 Forsyth Boulevard, St. Louis, MO 63105. Service can be made to C.T. Corporation System at 645 Lakeland Drive East, Suite 101, Flowood, MS 39232.

4.      Defendant Does 1 through 10 are individuals, corporations, limited liability companies, partnerships or other entities whose acts or omissions amounted to deliberate indifference and wanton disregard for the health of Jeffrey A. Davis, and consequently contributed to his death. The identities of these Defendants are unknown to the Plaintiff until adequate discovery is allowed.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental).

6.      Venue is proper in this judicial district pursuant to U.S.C. § 1391 as the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## CAUSE OF ACTION

7.      On August 13, 2014, Jeffrey Davis, deceased (hereinafter referred to as "Mr. Davis"), was sentenced to serve seven years in prison.

2

8.     Prior to and during his imprisonment, Mr. Davis had suffered from diabetes. As treatment for his diabetes, he had to check his blood sugar level several times a day and take Insulin at least once a day.

9.     On August 26, 2014, Mr. Davis was transferred to Rankin County Jail. He did not receive his first dose of Insulin until August 28, 2014, two days later than he was required to take it as part of his treatment.

10.     On August 27, 2014, a dental record was made which indicates Mr. Davis reported he had a drug allergy or sensitivity. Despite this, there is no record indicating this was ever acknowledged or further documented. In fact, Mr. Davis was allergic to the medication Bactrim and he reported said allergy to no avail.

11.     On October 17, 2014, Mr. Davis was transferred to Mississippi State Penitentiary (hereinafter referred to as "Parchman"), where he was intended to serve the remainder of his sentence.

12.     On October 18, 2014, one day after being moved to Parchman, Mr. Davis was admitted to the hospital due to his blood sugar level being dangerously high as a result of him not receiving Insulin.

13.     On October 27, 2014, Mr. Davis answered "yes" to the question asking if he was allergic or sensitive to any drug or penicillin, as indicated on his Inmate Registration and History Card.   Again, no employee of MDOC or Centurion ever followed up on which drugs he was allergic to as there is no Medication Administration Record that ever records his drug allergy. To the contrary, all Medication Administration Records are either blank, contain the acronym "NKA", or "No Known Allergies".

14.     While incarcerated at Parchman, employees of Mississippi Department of Corrections (hereinafter referred to as "MDOC") and Parchman's healthcare provider, Centurion of Mississippi, LLC (hereinafter referred to as "Centurion"), repeatedly and systemically refused to provide Mr. Davis the Insulin required to treat his diabetes.

15.     Likewise, employees of MDOC and Centurion repeatedly and systemically ignored the complaints made by both Mr. Davis and his mother Dianne Loden (hereinafter referred to as "Ms. Loden") when they requested Insulin be provided to him.

16.     On March 28, 2016, Mr. Davis was admitted to the hospital after suffering from complications resulting from a lack of Insulin. He was then treated and sent back to Parchman.

17.     On March 29, 2016, Mr. Davis' cellmate at the time called Ms. Loden to inform her that her son was still very sick.

18.     On March 30, 2016, Ms. Loden called Parchman and spoke with an individual whose identity is unknown who told her that Mr. Davis would be readmitted to the hospital. However, it was later discovered that he was never readmitted.

19.     On March 31, 2016, Ms. Loden called and spoke with a lady by the name of Ms. Washington, Mr. Davis' case manager. Ms. Washington informed Ms. Loden that she would check on Mr. Davis and make sure he got back to the hospital. At this time, Ms. Loden requested that Mr. Davis be allowed to call her.

20.     Later that day, on March 31, 2016, Ms. Loden received a phone call from Mr. Davis. Ms. Loden immediately noticed Mr. Davis was exhibiting slurred speech, a symptom of diabetic ketoacidosis which can be caused by both hyperglycemia and hypoglycemia. If left untreated, diabetic ketoacidosis can lead to a diabetic coma, and ultimately can result in death.

4

21.     Mr. Davis never received further medical treatment despite numerous requests made by both himself and Ms. Loden.

22.     On April 1, 2016, Mr. Davis was found dead in his bed. The cause of death was designated as diabetic ketoacidosis.

23.     The defendants' acts of refusing to treat Mr. Davis' diabetes and ignoring his own complaints as well as his mother's amounted to deliberate indifference and wanton disregard for his required diabetes treatment.

24.     At all times relevant to this civil action the individual defendants failed to implement policies, practices, customs or usages for addressing the medical needs of diabetic inmates. The failure to implement adequate policies amounted to deliberate indifference and wanton disregard to the health and safety of the decedent Mr. Davis.

25.     Additionally, while incarcerated at Parchman, employees of MDOC and Centurion repeatedly and systemically refused to acknowledge Mr. Davis's allergic reaction to the drug Bactrim. To the contrary, Mr. Davis was prescribed Bactrim, resulting in an allergic reaction which caused him great pain and suffering, and ultimately contributed to his demise.

26.     Despite Mr. Davis's reported allergic reaction to Bactrim, employees of MDOC and Centurion not only prescribed the drug to Mr. Davis, but concurrently prescribed him both Bactrim and Lisinopril, a combination which is known to have a harmful drug interaction.

27.     This combination of Bactrim and Lisinopril, along with the failure to treat his diabetes and infection, collectively led to Mr. Davis's aforementioned illness on the morning of March 29, 2016, and ultimately contributed to his demise.

28.     The defendants' acts of refusing to acknowledge Mr. Davis's allergies and refusal to treat Mr. Davis with antibiotics he was not allergic to amounted to deliberate indifference and wanton disregard for treatment of his infection.

29.     At all times relevant to this civil action the individual defendants failed to implement policies, practices, customs or usages for addressing the drug allergies of inmates. The failure to implement adequate policies amounted to deliberate indifference and wanton disregard to the health and safety of the decedent Mr. Davis.

30.     Furthermore, at all times relevant to this civil action the individual defendants failed to implement policies, practices, customs or usages for addressing dangerous interactions of drugs concurrently prescribed to inmates. The failure to implement adequate policies amounted to deliberate indifference and wanton disregard to the health and safety of the decedent Mr. Davis.

31.     The aforementioned acts and omissions of the individual defendants were committed with deliberate indifference and wanton disregard as to Mr. Davis' health.

32.     As a result of the Defendants' acts and omissions, the decedent Mr. Davis suffered extreme physical pain and suffering, emotional distress and loss of enjoyment of life. Plaintiff Ms. Loden has lost the lifelong love, companionship and support of her son, and has suffered emotional distress and mental anguish.

(Claim 1 - Fourteenth Amendment)

33.     Plaintiff incorporates herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

34.     All of the Defendants violated Mr. Davis' clearly established right to adequate medical care during his incarceration by denying him necessary emergency medical care despite being subjectively aware of a serious risk of harm to Mr. Davis' health and safety from the denial

6

of said medical care. Said violation by Defendants were the proximate cause of Mr. Davis' suffering and death.

(Claim 2 - MTCA Wrongful Death Reckless Disregard)

35.     Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

36.     The actions and omissions of the Defendants by denying decedent Mr. Davis emergency medical assistance which caused the anxiety, emotional distress, pain, suffering, and injuries to Mr. Davis constituted reckless disregard all in violation of Mississippi statutory and common law.

37.     The Defendants breached their duties to the Decedent Mr. Davis which caused the injuries and damages suffered by her and by Plaintiff.

38.     The Defendants' acts and omissions give rise to a cause of action for wrongful death pursuant to the Mississippi Wrongful Death Statute, Mississippi Code Ann. §11-7-13, which cause of action is stated on behalf of the Plaintiff and wrongful death beneficiary of the Decedent Mr. Davis.

(Claim 3 – Intentional Infliction of Emotional Distress)

39.     Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

40.     The acts and omissions of all of the Defendants, as set forth above were extreme and outrageous and intolerable in a civilized society and caused the Decedent Mr. Davis extreme emotional distress.

41.     The Defendants knew, or should have known, that their actions would evoke outrage or revulsion resulting in severe emotional distress and anxiety on the part of the Decedent Mr. Davis. As a direct and proximate result of Defendants' willful acts, the Decedent Mr. Davis and the Plaintiff were injured and damaged as alleged herein.

(Claim 4 – Negligence)

42.     The Defendant Centurion, as the healthcare provider for Parchman, was at all times relevant to this civil action under an affirmative duty to provide adequate medical care to the Decedent Mr. Davis.

43.     The Defendant Centurion breached its duty to the Decedent Mr. Davis through its acts and omissions which failed to provide adequate medical care to the Decedent Mr. Davis.

44.     As a direct and proximate result of the grossly inadequate medical care provided by the Defendant Centurion, the Decedent Mr. Davis suffered in agony while languishing in Parchman and died.

45.     The acts and omissions of the Defendant Centurion amount to gross negligence that evidenced a willful, wanton or reckless disregard for the safety of Decedent Mr. Davis.

(Damages)

46.     Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

47.     As a direct and proximate result of the actions and omissions of Defendants, Decedent Mr. Davis suffered damages including, but not limited to, medical and funeral expenses, physical injuries, pain and suffering, mental anguish, future lost wages and loss of life.

48.     Plaintiff, as the wrongful death beneficiary of Decedent Mr. Davis, is legally entitled under the Mississippi Wrongful Death Statute, Miss. Code Ann. § 11-7-13, to recover in this action all damages for all wrongful death beneficiaries of Decedent Mr. Davis whose death was legally and proximately caused by the acts and omissions of Defendants.

49.     As a result of the aforementioned acts and/or omissions, Defendants are liable for all elements of damages arising from the violation of Decedent Mr. Davis' rights and his wrongful death, including but not limited to the following:

      a.  Damages for the physical pain and suffering of Jeffrey A. Davis prior to his death;

      b.  Damages for the mental anguish and horror suffered by Jeffrey A. Davis prior to his death;

      c.  Damages for the losses of financial support and maintenance which Jeffrey A. Davis would have provided to Plaintiff;

      d.  Damages for the loss of love, companionship, society, advice and care of Jeffrey A. Davis, the Plaintiff suffered and will suffer in the future;

      e.  Damages for the funeral expenses resulting from the death of Jeffrey A. Davis;

      f.  Damages for the value of the life of Jeffrey A. Davis;

      g.  Damages for all other losses, both economic and intrinsic, and tangible and intangible arising from the death of Jeffrey A. Davis;

      h.  Past pain and suffering;

      i.  Past medical expenses;

      j.  Extreme mental anguish and emotional distress;

      k.  Statutory damages pursuant to 42 U.S.C. § 1983;

9

l.   Attorneys' fees pursuant to 42 U.S.C. §1988;

m.  Punitive damages on all state and federal claims; and

n.   Other damages to be shown during discovery and at trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief: That process is issued in accordance with law to the Defendants and that Plaintiff be granted a jury trial and judgment from and against the Defendants as follows:

1.    Reasonable compensatory damages from and against each Defendant, in their individual or official capacities, individually, jointly, severally and vicariously, as appropriate;

2.    Punitive damages as to Plaintiff's federal claims from Defendants in their individual capacities in an amount reasonably calculated to punish each Defendant and to deter similar conduct by other prison personnel, inmate healthcare providers and others similarly situated;

3.    Punitive damages as to Plaintiff's state common law and statutory claims against Defendants in their individual capacities;

4.    Pre-judgment interest on liquidated damages;

5.    Post-judgment interest;

6.    All costs associated with bringing this action and prosecution, including all costs of court, reasonable attorney fees and expenses pursuant to 42 U.S.C. § 1988 and state law; and

7.    General Relief, to which Plaintiff may be entitled which has been specifically pled.

Respectfully submitted, this the 30th day of May, 2018.

/s/ Jeffrey D. Leathers

JEFFREY D. LEATHERS
MS BAR NO. 100082

Greer, Russell, Dent & Leathers, PLLC
117 N. Broadway
Tupelo, Mississippi 38802
(662) 842-5345 / Phone
(662) 842-6870 / Facsimile
jleathers@greerlawfirm.com / Email